UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BARTHOLOMEW JONES,

                Plaintiff,

    v.

KING COUNTY, *et al.*,

               Defendants.

Case No. C18-0914-RSL-MAT

REPORT AND RECOMMENDATION

INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Bartholomew Jones is a state prisoner who is currently incarcerated at the Washington Corrections Center in Shelton, Washington. He filed the instant action while he was confined at the King County Jail in Seattle, Washington. Plaintiff alleges in his amended civil rights complaint that defendants violated his constitutional right to practice his religion because the kosher diet served to him at the King County Jail did not meet Jewish dietary laws and was not nutritionally adequate. Plaintiff also alleges that defendants violated his right to be free from cruel and unusual punishment because the kosher diet did not provide proper nourishment. Plaintiff identifies King County, King County Correctional Facility ("KCCF") Director William Hayes, and unidentified members of the KCCF

REPORT AND RECOMMENDATION - 1

1  Kitchen Staff as defendants in this action. Plaintiff appears to seek only injunctive relief in his
2  amended complaint.
3        Plaintiff and defendants have filed motions for summary judgment, and those motions are
4  now ripe for review. The Court, having considered the pending summary judgment motions, all
5  briefing of the parties and evidence submitted in relation to these motions, and the balance of the
6  record, concludes that plaintiff's motion for summary judgment should be denied, defendants'
7  motion for summary judgment should be granted, and plaintiff's amended complaint and this
8  action should be dismissed with prejudice.

9  BACKGROUND

10        Plaintiff asserts in this action that defendants have violated his First and Eighth
11  Amendment rights by failing to provide him a nutritionally adequate diet which conforms to
12  Jewish dietary laws. (*See* Dkt. 8 at 3, 5.) Plaintiff states in his amended complaint that he was
13  practicing the Jewish faith at KCCF, and he maintains that the kosher diet provided by the facility
14  did not meet Jewish dietary laws because some food items contain yeast and leaven, and the meat
15  was not certified kosher. (*Id*.) Plaintiff also claims that the diet did not provide proper nourishment
16  as evidenced by the fact that he lost weight while at KCCF which, he maintains, would not have
17  happened had he received the 2600 calories per day called for by unspecified federal statutes. (*Id*.)
18        Plaintiff was booked into the KCCF on May 4, 2018. (Dkt. 27 at 3, Dkt. 40 at 1.) On May
19  18, 2018, plaintiff submitted a request to be placed on the kosher diet. (Dkt. 30, ¶ 14.) The request
20  was approved and plaintiff was placed on the kosher diet the same day. (*Id*.) In addition to being
21  placed on the kosher diet pursuant to his own request, Jail Health Services (JHS) informed the
22  Food Services Division (FSD) of the King County Department of Adult and Juvenile Detention
23  (DAJD) that plaintiff had to be on a mechanical soft ("mech soft") diet, which consists of softer

REPORT AND RECOMMENDATION - 2

food that is easier to chew and digest.[1]  (Dkt. 30, ¶ 15.)  Plaintiff was therefore placed on a combination kosher mech soft diet that consisted of food from the kosher menu with food items that were too hard to chew substituted with alternative, softer, kosher food items.  (*Id*.)

        The FSD works with a licensed dietitian nutritionist, currently Barbara Wakeen, to create, review, and revise its various menus to ensure that they are nutritionally adequate and that they comply with the various religious and/or medical requirements of inmates.  (*Id*., ¶ 5.)  With respect to the kosher menu, the FSD has worked in collaboration with Ms. Wakeen to ensure that the menu is nutritionally adequate and consists of items that meet the dietary requirements of kosher laws. (*Id*., ¶ 6; Dkt. 31, ¶ 5.)  In addition to identifying what food to serve as a part of the kosher menu, Ms. Wakeen also assists the DAJD in identifying suppliers from which kosher foods may be purchased.  (*Id*.)

        Kosher foods may be obtained from one of many nationally recognized kosher supervisory organizations.  (*Id*., ¶ 8; *Id*., ¶ 7.)  Each organization certifies that their food products are kosher by utilizing a unique kosher symbol.  (*See id*.)  Packaged kosher food is most often certified by placement of the unique kosher symbol on the packaging.  (*Id*., ¶ 9; *Id*., ¶ 8.)  However, if packaging does not include such a symbol, a certificate can be requested directly from the supplier. (*Id*.)  The FSD confirms that all kosher foods purchased for use by the DAJD are kosher either by looking for the kosher symbol on the packaging or by requesting certification from the supplier that the product is kosher.  (Dkt. 30, ¶ 10.)  According to defendants, every food item served on the DAJD kosher menu, or as a part of the kosher mech soft diet, is certified kosher.  (*See* Dkt. 30, ¶¶ 10, 11; Dkt. 31, ¶ 9.)

---

[1] The FSD serves DAJD inmates food from one of several different menus designed to address inmates' various religious and/or medical requirements.  (Dkt. 30, ¶ 4.)

REPORT AND RECOMMENDATION - 3

After being approved to receive a kosher diet, plaintiff filed several kites and grievances complaining about what was and was not being provided as a part of the kosher diet. (*See* Dkt. 30, ¶¶ 17, 18, 19; Dkt. 34, ¶ 10.) On May 25, 2018, plaintiff filed a grievance complaining that he was not being provided the full nutrition required of a 2000 calorie per day diet, and was getting smaller portions in comparison to other inmates. (Dkt. 30, ¶ 19.) Food services staff, in their response to plaintiff's grievance, advised plaintiff that he may be getting less food because the kosher food had more nutritional value and more calories. (*Id*.)

Ms. Wakeen, the dietician, explains that the nutritional adequacy of a diet requires a complex nutritional analysis and cannot be determined either by looking solely at calories (or any other individual nutritional factor) or the quantity of food served on one menu in comparison to that served on a different menu. (Dkt. 31, ¶ 13.) Ms. Wakeen states that she reviewed the kosher mech soft diet served by the DAJD, and analyzed it from a nutritional perspective using the Food Processor Nutritional Analysis Program. (*Id*., ¶ 15.) Through this analysis, Ms. Wakeen determined that the diet provides an average of more than 2200 calories per day and meets or exceeds all nationally recognized nutrient standards, and that the diet is therefore nutritionally adequate. (*Id*.)

On June 7, 2018, plaintiff submitted a service request kite asking, in part, why he did not receive cheese with his meat sandwiches. (Dkt. 30, ¶ 18.) The FSD, in its response to plaintiff's kite, informed plaintiff that kosher guidelines prohibit cheese and meat from being served at the same time. (*Id*.) Ms. Wakeen explains that kosher laws mandate that only certain foods be eaten and that certain foods may not be combined. (Dkt. 31, ¶ 14.) Among the foods that may not be combined by people observing kosher dietary laws are meat and dairy products. (*See* Dkt. 31, Ex. 1 at 4.)

REPORT AND RECOMMENDATION - 4

1  On June 25, 2018, plaintiff wrote a letter to William Hayes, Director of the DAJD, asserting
2  that the food he was being served was not kosher. (Dkt. 30, ¶ 17.) Plaintiff attached to the letter
3  a copy of the packaging label for the food in question, chicken bologna, and the page contained
4  plaintiff's own notations pointing out that nowhere on the label did it say the food was kosher.
5  (*See* Dkt. 30, ¶ 17 and Ex. 1.) The label did, however, contain a symbol (a capital letter "U" with
6  a circle around it) which is a nationally recognized kosher symbol certifying that the food item in
7  question is kosher. (*See id.*; Dkt. 31, ¶ 7 and Ex. 1 at 2.)

8  On July 23, 2018, plaintiff asked to be seen by KCCF medical staff because of a purported
9  weight loss, and he requested that he be given double meal portions. (Dkt. 34, ¶ 10.) Plaintiff was
10 weighed at that appointment and it was determined that he had gained seven pounds since his
11 previous weight check less than a month earlier, and that he was actually overweight. (*See id.*, ¶¶
12 5, 10.) The medical staff determined that though plaintiff was overweight, he was otherwise
13 healthy and there was no need for plaintiff to receive additional food. (*Id.*, ¶ 10.) In fact, plaintiff's
14 medical records show that between May 2018 when he was booked into the jail, and August 2018
15 when he had his last weight check, plaintiff's weight fluctuated but his Body Mass Index indicated
16 he was actually overweight during the entirety of that period. (*See id.*, ¶¶ 5, 6, 8, 9.)

DISCUSSION

Summary Judgment Standard

19 Summary judgment is appropriate when a "movant shows that there is no genuine dispute
20 as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
21 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails
22 to make a sufficient showing on an essential element of his case with respect to which he has the
23 burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears

REPORT AND RECOMMENDATION - 5

the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.  The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court must draw all reasonable inferences in favor of the nonmoving party.  *Id*. at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585.  "[T]he requirement is that there be no *genuine* issue of material fact. . . .  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment.  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216,

REPORT AND RECOMMENDATION - 6

1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

### First Amendment Claim

The Supreme Court has made clear that inmates retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). In order to merit protection under the Free Exercise Clause, a prisoner's religious claim must satisfy two criteria: (1) the prisoner's proffered belief must be sincerely held; and (2) the claim must be rooted in religious belief, not in purely secular philosophical concerns. *See Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). In addition, to establish a free exercise violation, a prisoner must show that the interference with the practice of his religion was more than an inconvenience, the prisoner must demonstrate that the burden was substantial. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)).

Plaintiff asserts in his amended complaint that defendants hindered his ability to practice his religious beliefs by providing a kosher diet that did not meet Jewish dietary laws and was not nutritionally adequate. (*See* Dkt. 8 at 3, 5.) In addition, plaintiff argues in his motion for summary judgment that because the kosher diet failed to provide proper nutrition, he spent most of his time in a state of constant hunger which diminished his religious experience. (Dkt. 26 at 2.) Defendants argue in their motion for summary judgment that plaintiff fails to demonstrate that he, in fact, had a sincerely held religious belief or, in any event, that he was served food that was not kosher. (Dkt. 27 at 13-16.)

REPORT AND RECOMMENDATION - 7

While plaintiff asserts in his amended complaint that he was "practicing the Jewish faith" at KCCF, that practice appears to have extended only so far as requesting that he be provided a kosher diet. KCCF chaplain Jon Michael Matteson reports that plaintiff made several requests to visit with him, and the two met on several occasions, but plaintiff was always studying from a Christian perspective and he submitted requests for Christian materials. (Dkt. 33, ¶ 5.) According to Mr. Matteson, he and plaintiff never discussed Judaism, and he does not recall plaintiff ever indicating he was Jewish. (*Id.*) Mr. Matteson also states that he does not remember plaintiff ever asking for Jewish materials, or seeking to schedule a visit with a Jewish Rabbi, and that he was not able to locate any documentation indicating plaintiff ever made such requests. (*Id.*)

In addition to plaintiff's apparent lack of interest in the study of Judaism while "practicing the Jewish faith" at KCCF, the materials in the record evidence a clear lack of understanding on plaintiff's part of basic Jewish dietary laws. Notably, plaintiff complained in a letter to Director Hayes in June 2018 that the food he was being served was not kosher because the word "kosher" did not appear on the food label, even though the label clearly contained a nationally recognized kosher symbol. Plaintiff also inquired of DAJD staff in June 2018 why he was not receiving cheese with his meat sandwiches, and staff had to inform him that kosher guidelines prohibit meat and dairy products from being served together.

Plaintiff also complains in his amended pleading that he was served products containing yeast and/or leaven, apparently unaware that these items are only prohibited during Passover.[2] Finally, the record reveals that plaintiff purchased non-kosher food items from the KCCF commissary (a Chocolate Double Decker Moon Pie and eight containers of Hot & Spicy

---

[2] Nothing in the record suggests that plaintiff was confined at KCCF during Passover in 2018.

REPORT AND RECOMMENDATION - 8

Vegetarian Ramen Noodles), and was presumably aware that the items were not kosher given that the commissary list clearly identifies which of the items available for purchase are kosher, and the items plaintiff purchased were not identified as such. (Dkt. 32, ¶¶ 4, 6.)

Given this record, defendants rightly call into question the sincerity of plaintiff's religious beliefs. However, regardless of the sincerity of plaintiff's religious beliefs, the first part of plaintiff's First Amendment claim necessarily fails because there is clear evidence in the record that the food served to plaintiff at KCCF as a part of the kosher mech soft diet did, in fact, comport with Jewish dietary laws.

Defendants have submitted evidence in the form of declarations from the DAJD Food Service Supervisor, Hope Hendershot-Brown, and from the DAJD's consulting dietician nutritionist, Ms. Wakeen, who confirm that all of the food items served on the kosher menu, and as a part of the kosher mech soft diet, are kosher. (*See* Dkt. 30, ¶¶ 11, 16; Dkt. 31, ¶ 9.) Plaintiff's belief that the food he was served was not kosher appears to be based on his misunderstanding about the use of yeast and leaven in the kosher diet, and his lack of familiarity with symbols denoting certified kosher products. Plaintiff provides no actual evidence to refute that submitted by defendants demonstrating that the food he was served was, in fact, kosher.

To the extent plaintiff contends that the nutritional inadequacy of the mech soft kosher diet diminished his religious experience, his First Amendment claim also fails. Defendants, through the declaration of Ms. Wakeen, have demonstrated that the mech soft kosher diet was calorically and nutritionally sufficient. The only materials offered by plaintiff to support his claim that the diet was nutritionally inadequate are copies of the DAJD menu to which he assigned calorie counts for some, but not all, of the foods listed on the menu. (*See* Dkt. 26 at 4-6.) On those copies, plaintiff acknowledges that he was unable to determine the exact number of calories served

REPORT AND RECOMMENDATION - 9

because he did not have calorie counts for the main courses. (*See id.*) This incomplete and unsupported documentation is simply not sufficient to support plaintiff's claim that the diet lacked sufficient calories.

Even assuming plaintiff had been able to accurately determine daily caloric intake, and to provide documentation supporting his calculations, Ms. Wakeen makes clear that nutritional adequacy cannot be determined solely by looking at calorie count. (Dkt. 31, ¶ 13.) Rather, nutritional adequacy requires a complex nutritional analysis, an analysis which was conducted by Ms. Wakeen with respect to the mech soft kosher diet served to plaintiff at KCCF, and which confirmed that the diet was nutritionally adequate. Plaintiff offers no actual evidence demonstrating that the diet was inadequate and he therefore fails to demonstrate that the defendants burdened the practice of his religion by denying him an adequate diet.

## Eighth Amendment Claim

The treatment that a prisoner receives in prison, and the conditions under which he is confined, are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement. *Farmer*, 511 U.S. 832. This duty includes ensuring that inmates receive adequate food, clothing, shelter, and medical care, and taking reasonable measures to guarantee the safety of inmates. *Id*.

In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component. The Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind. *Id*. at 834. The objective component of an Eighth Amendment claim is "contextual and responsive

to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837. The Supreme Court has made clear that it is obduracy and wantonness, not inadvertence or error in good faith that characterize the conduct prohibited by the cruel and unusual punishment clause. *Whitley v. Albers*, 475 U.S. 312 (1986).

Plaintiff asserts in his amended complaint that because the kosher diet he was provided did not contain proper nourishment, and provided less nourishment than the main diet, he lost weight very quickly. (*See* Dkt. 8 at 3, 5.) Plaintiff maintains that a diet of at least 2600 calories is required by federal law. (*Id*.) In his summary judgment motion, plaintiff reiterates his assertion that he has a right to a 2600 calorie diet, though he offers no evidence to support this assertion. (Dkt. 26 at 1.) Plaintiff also claims, without evidentiary support, that King County allows the KCCF to serve a kosher diet containing only 1100 to 1375 calories per day "which barely wards off malnutrition." (*Id*. at 2.) Plaintiff maintains that because he received insufficient calories, he lacked energy and would spend most of his day sleeping, resulting in the loss of muscle mass and body weight, and the loss of 4 teeth. (*Id*. at 3.)

REPORT AND RECOMMENDATION - 11

As explained above, defendants have submitted evidence in support of their summary judgment motion demonstrating that the mech soft kosher diet served to plaintiff was calorically and nutritionally adequate. Defendants have also submitted evidence demonstrating that plaintiff actually gained weight while he was at KCCF, and that he was actually overweight. (Dkt. 34, ¶¶ 5, 6, 8, 9.) In his response to defendants' summary judgment motion, plaintiff does not deny the weight gain, but attributes it to buying commissary items and obtaining food items from other inmates to supplement the diet he was being provided. (Dkt. 40 at 3.) Plaintiff also acknowledges that he ate non-kosher food, but claims that it was necessary to maintain a healthy lifestyle and that absent this supplementation of his diet he would have fallen into ill health. (*See id*. at 4.) Plaintiff does not explain how this admitted weight gain, and his purported efforts to maintain a healthy lifestyle, comport with his prior claim that he was suffering the effects of malnourishment including the loss of muscle mass, body weight, and teeth.

Regardless, the record is devoid of any evidence that plaintiff's Eighth Amendment rights were violated. The Ninth Circuit has made clear that the Eighth Amendment "requires only that prisoners receive food that is adequate to maintain health." *Foster v. Runnels*, 554 F.3d 807, 813 n. 2 (9th Cir. 2009) (citing *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir.1993)). As noted above, defendants' evidence demonstrates that the mech soft kosher diet provided at KCCF was nutritionally adequate. Plaintiff makes no showing to the contrary. In the absence of any evidence that the diet provided at KCCF was nutritionally inadequate, plaintiff's Eighth Amendment claim necessarily fails.

## Mootness

An issue which has arisen since the parties filed their summary judgment motions is that plaintiff has been transferred out of the King County Jail and into the custody of the Washington

REPORT AND RECOMMENDATION - 12

Department of Corrections. Since plaintiff has been transferred from King County custody where the alleged violations occurred, any claims for injunctive relief relating to conditions at the King County Jail are presumably moot. *See Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991). And, given that plaintiff asserts no claim for damages in this action, it appears that the entirety of this action is subject to dismissal on this basis alone. The Court has addressed plaintiff's constitutional claims because the parties did not have an opportunity to brief the mootness issue.

## CONCLUSION

Based on the foregoing, this Court recommends that plaintiff's motion for summary judgment be denied, that defendants' motion for summary judgment be granted, and that plaintiff's amended complaint and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect the right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be

/ / /

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION - 13

ready for consideration by the District Judge on **March 29, 2019**.

DATED this <u>4th</u> day of March, 2019.

*/s/ Mary Alice Theiler*
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14